IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| BRENDA FORREST, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:12-cv-0246 |
| ) | Judge Trauger |
| THE TROUSDALE COUNTY BOARD ) | |
| OF EDUCATION and CLINT ) | |
| SATTERFIELD, DIRECTOR OF ) | |
| TROUSDALE COUNTY SCHOOLS, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM

Pending before the court is the Defendants' Motion for Summary Judgment (Docket No. 11), to which the plaintiff has filed a response (Docket No. 27). Also before the court is the Plaintiff's Motion for Partial Summary Judgment (Docket No. 24),[1] to which the defendants have filed a response (Docket No. 31). For the reasons discussed herein, the defendants' motion will be granted, while the plaintiff's motion will be denied.

## BACKGROUND

This case arises from the dismissal of the plaintiff, Brenda Forrest, who was formerly employed by the defendant, Trousdale County Board of Education (the "Board") as a tenured teacher. The plaintiff was suspended without pay by the Director of Trousdale County Schools, defendant Clint Satterfield, after she struck a sixth grade African American student in his chest

---

[1] The plaintiff seeks summary judgment as to liability on all of her claims. (Docket No. 26 at 1.)

1

during class. Although the plaintiff initially requested a hearing regarding her suspension, she agreed to withdraw that request in a settlement agreement with Satterfield in exchange for a promise that the school would not pursue dismissal charges against her based on information obtained during the investigation of the classroom incident. However, after learning that state funding was expected to drop during the next school year, Satterfield recommended, and the Board approved, the abolition of 5 teaching positions. Shortly thereafter, the plaintiff learned that her teaching position was one of the five that was abolished. This action then followed.

Prior to her dismissal, the plaintiff taught in the Trousdale County school system for approximately 19 years and was licensed to teach grades 1-8.[2] For approximately ten years, the plaintiff taught English to students in the sixth grade. During the 2010-2011 school year, she was assigned to teach reading/language arts to sixth graders at the Jim Satterfield Middle School.

On February 25, 2011, the plaintiff was suspended without pay pending an investigation into a classroom incident that transpired the preceding day in which she struck an African American student on his chest with the back of her hand. After concluding his investigation, Satterfield met with the Board's attorney, who provided him with a list of disciplinary options that ranged from suspension to termination. On March 4, 2011, Satterfield notified the plaintiff

---

[2] Unless otherwise noted, the facts are drawn from the defendants' statement of undisputed material facts (Docket No. 12), the plaintiff's responses thereto (Docket No. 28), the defendants' reply to the plaintiff's responses (Docket No. 29), and related exhibits. They are also drawn from the plaintiff's statement of undisputed material facts (Docket No. 25), the defendants' responses thereto (Docket No. 30), and related exhibits. The court draws all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Brown v. United States*, 583 F.3d 916, 919 (6th Cir. 2009).

in a meeting of his decision to keep her suspended without pay for the remainder of the 2010-2011 school year. After informing the plaintiff of her right to appeal his suspension decision to the Board, Satterfield stated that an appeal could result in a reduction, enhancement, or upholding of the disciplinary measure he imposed. He also stated that he had imposed the minimum discipline recommended. On March 7, 2011, the plaintiff, with the assistance of a Tennessee Education Association ("TEA") staff attorney, requested a hearing on her suspension.

After this request was made, Satterfield was informed of allegations that the plaintiff had used a racial epithet during a telephone conversation with another teacher to describe the student she had struck. On April 5, 2011, Satterfield interviewed three fellow sixth grade teachers, including the individual who was involved in the aforementioned conversation, to inquire into, among other things, whether the plaintiff had ever uttered racial epithets to describe students in the past. During the interviews, Satterfield confirmed that the plaintiff had used a particular racial epithet during a phone conversation to describe the student she struck. The plaintiff herself has admitted to using that epithet. Satterfield was also told during the interviews of another incident where the plaintiff used a racial epithet to describe African American students and that the plaintiff had a problem with African American students generally. At his deposition, Satterfield testified that, even after the interviews, he had no intention of seeking the plaintiff's termination.

In any event, attorneys for the Board and the plaintiff entered into settlement negotiations shortly thereafter. Satterfield testified that the Board wished to avoid the disclosure of the teacher interview responses during the upcoming hearing because of their potential to expose the

3

Board to liability. He added that the Board was trying to protect both itself and the plaintiff by settling the disciplinary matter.

Following a series of emails exchanged between counsel, the plaintiff and Satterfield, in his capacity as Director of Trousdale County Schools, entered into a settlement agreement. Among other things, the agreement provided that:

> (1) Trousdale County Schools will not pursue dismissal charges against Ms. Forrest based on current information available to the school system. However, any future disciplinary issues or negative information could result in further action against Ms. Forrest, up to and including dismissal.
>
> (2) In consideration of the above, Ms. Forrest will withdraw her request for a hearing, on the suspension charges brought against her, before an impartial hearing officer. Additionally, Ms. Forrest will sign the letter of reprimand originally submitted for her review in March.

The plaintiff signed the letter of reprimand on April 18, 2011 and filed a motion with the Board to withdraw her request for a hearing three days later. The plaintiff also signed the settlement agreement without dating it. The record does not otherwise reveal precisely when she executed the instrument. For his part, Satterfield signed the settlement agreement on April 21, 2011.

Each year, the first draft of the county school system budget is prepared after the State of Tennessee sends an estimate of the Basic Education Program ("BEP") funding allocation for the upcoming school year. On April 19, 2011, Satterfield received the BEP funding estimate for the 2011-2012 school year. The estimate provided that funding for the school system was projected to drop by a total of $644,000 from the previous year. However, pursuant to a state stabilization provision, the school system was projected to actually lose $175,000 for the 2011-2012 year. If

the formula underlying the BEP's funding allocation remained the same, the school system stood to lose $644,000 in 2012-2013, when stabilization would no longer attach. The final BEP funding report for the 2011-2012 school year, which was received in July 2011, varied by only $5000 from the April estimate.[3] The annual budget for the school system was $9 million.

Satterfield testified that he did not initially understand the full implications of the BEP funding estimate after receiving it on April 19, 2011. However, at some point prior to a May 12, 2011 Board meeting, he concluded that teaching positions would have to be eliminated in light of the expected funding cuts. He thus made the decision to recommend that the Board abolish teaching positions. In addition, he concluded that, because of a decline in student enrollment, two K-8 teaching positions could be eliminated without compromising student-teacher ratios. At its May 12, 2011 meeting, the Board voted to approve Satterfield's recommendation and abolish 5 teaching positions, including the aforementioned K-8 classroom teaching positions, two career-technical positions, and one agriculture teaching position. However, because the school needed to add a chemistry teaching position to keep up with state graduation requirements, there was a net reduction of 4 teaching positions. At this time, Satterfield had yet to decide which specific teaching positions would be eliminated.

Shortly thereafter, Satterfield decided to eliminate the plaintiff's K-8 teaching position. The plaintiff was informed of this decision by letter sometime during the middle of May 2011.[4]

---

[3] It is unclear whether the $5000 difference represented an increase or decrease from the earlier estimate.

[4] The record contains two separate letters notifying the plaintiff that her position was abolished. One letter is dated May 16, 2011, while the other is dated May 18, 2011. At his deposition, Satterfield testified that he was unsure as to which of the letters was actually mailed

5

According to Satterfield, test scores for reading/language arts, the subject which the plaintiff taught, were among the poorest in the school system. In arriving at his decision to eliminate the plaintiff's position, Satterfield considered feedback he had received from principals, prior evaluations in the plaintiff's file, and the Tennessee value-added ("TVAAS") scores for all reading/language arts teachers in grades 4-8. The TVAAS score is an assessment of how much a teacher influences her student's academic progress. Satterfield testified that the TVAAS scores provided him with an objective tool to aid him in determining which positions to abolish.

To compare the TVAAS scores among the eight teachers who taught reading/language arts to students in grades 4-8, Satterfield created a spreadsheet plotting each teacher's 2010 TVAAS score and, to the extent they existed, three-year average scores. The spreadsheet revealed that, like every other reading/language arts teacher in grades 4-8, the plaintiff received a negative TVAAS score in 2010. Under the TVAAS, the State Growth Standard was set at a score of 0.0. The plaintiff's score of -7.54 was the second lowest among the eight teachers and placed her in level one, which, according to the TVAAS evaluation, is reserved for teachers who are deemed to be the least effective. According to Satterfield's spreadsheet, all but two of the school system's grade 4-8 reading/language arts teachers received a level one rating in 2010. However, over a three-year period, the plaintiff's TVAAS score of -5.21 was the lowest of the four teachers for whom such averages were available. This average score also placed the plaintiff in level one. Only one of the remaining teachers with a three-year average score

---

to the plaintiff.

received a level one rating. Satterfield testified that the plaintiff's TVAAS scores showed that her students had not experienced normal academic growth in any year.

The plaintiff does not dispute that state funding cuts required the school system to eliminate teacher positions. Instead, she contends that her job was not actually abolished because the school system has continued to teach sixth grade reading/language arts. Her position is encapsulated in the following deposition testimony:

> Q: Sure. Are you saying that it was -- that the idea of the school board voting to reduce the number of K-8 jobs available --
>
> . . .
>
> Q: -- was a sham so that they could get rid of you?
>
> A: I honestly cannot answer that with me knowing exactly what you're asking. If you're asking do I think that they made this up just to be able to get rid of me? No, I understand that they had a cut because it was cuts in other schools systems too. I understand that that was right, but the problem that I have is that my job was not abolished.
>
> Q: So are you saying that because you're a sixth grade English teacher, unless they quit teaching sixth grade English you're guaranteed a job?
>
> A: I should be, yes.

Initially, a fifth-grade non-tenured teacher was transferred to fill the sixth grade reading/language arts position the plaintiff previously taught. After this teacher resigned from her teaching position, a tenured seventh grade reading/language arts teacher was transferred to fill the position.

The plaintiff commenced this action on February 13, 2012 in the Chancery Court for Trousdale County, alleging federal and state law claims against Satterfield, in both his individual

and official capacity, and the Board. (Docket No. 1-1.) She alleges that the defendants used the guise of a reduction-in-force to discharge her without having to provide pre-termination notice and a hearing in violation of the Due Process Clause of the Fourteenth Amendment of the U.S. Constitution, Article I, Section 8, of the Tennessee Constitution, and Tenn. Code Ann. §§ 49-5-511 and -5-512, which are part of Tennessee's teacher tenure law. (Docket No. 26 at 2; Docket No. 1-1 at 12-13.) She also alleges that the defendants breached the implied covenant of good faith and fair dealing contained in the settlement agreement when they dismissed her pursuant to a reduction-in-force. (Docket No. 1-1 at 14.) The plaintiff seeks declaratory relief, immediate reinstatement, back pay, damages for breach of contract, compensatory damages for violations of her federal due process rights pursuant to 42 U.S.C. § 1983, compensatory damages for violations of her state constitutional rights, and costs and reasonable attorney's fees pursuant to 42 U.S.C. § 1988. (*Id.* at 14-15.)

## ANALYSIS

### I.  Standard of Review

Rule 56 requires the court to grant a motion for summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). If a moving defendant shows that there is no genuine issue of material fact as to at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to provide evidence beyond the pleadings, "set[ting] forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Conversely, a moving

plaintiff must show that the defendant cannot raise a genuine issue of fact regarding any element of the relevant claims. In both instances, "[i]n evaluating the evidence, the court must draw all inferences in the light most favorable to the non-moving party." *Moldowan*, 578 F.3d at 374 (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

At this stage, "'the judge's function is not . . . to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). But "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient," and the party's proof must be more than "merely colorable." *Anderson*, 477 U.S. at 249, 252. An issue of fact is "genuine" only if a reasonable jury could find for the non-moving party. *Moldowan*, 578 F.3d at 374 (citing *Anderson*, 477 U.S. at 252).

## II. The Pending Motions

Satterfield and the Board have moved for summary judgment as to all of the plaintiff's claims. They primarily argue that the plaintiff's teaching position was abolished pursuant to a legitimate reduction-in-force and thus her due process and statutory claims must be dismissed. (Docket No. 16 at 8-9, 12-13.) They also contend that the plaintiff has failed to present any evidence of bad faith to support her claim premised on a breach of the implied covenant of good faith and fair dealing. (*Id.* at 13.) For her part, the plaintiff argues that the record evidence shows not only that the defendants' motion should be denied, but that instead summary judgment should be granted in her favor as to liability on all of her claims. (Docket No. 26 at 7-12; Docket No. 27.)

9

## A. Due Process

To succeed on her federal and state due process claims, the plaintiff must show that she possessed a constitutionally protected property interest and that the defendants deprived her of that interest without adequate process. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985).[5] Property interests are not created by the Constitution, but are instead created and defined by "existing rules or understandings that stem from an independent source such as state law . . . ." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972). Because the plaintiff was a tenured teacher at the time of her termination, the court will look to the provisions of the state teacher tenure law to determine the nature of her property interest.

Tennessee's teacher tenure law expressly states that a tenured teacher may be dismissed in only one of two circumstances. The first is when a teacher is dismissed for cause,[6] in which case the teacher, prior to being dismissed, must be given written notice of the charges against her and an opportunity to contest those charges at a hearing before an impartial officer selected by

---

[5] Article I, Section 8 of the Tennessee Constitution provides:

> That no man shall be taken or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed, or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.

*Tenn. Const.* art. I, § 8. The Tennessee Supreme Court has noted that the "law of the land" provision and due process provisions of the federal constitution provide similar protections. *Bailey v. Blount Cnty. Bd. of Educ.*, 303 S.W.3d 216, 230 (Tenn. 2010). Accordingly, the court will analyze the federal and state due process claims together.

[6] The statute lists 5 causes for which a teacher may be dismissed: incompetence, inefficiency, neglect of duty, unprofessional conduct, and insubordination. Tenn. Code Ann. § 49-5-511(a)(2).

the board of education. Tenn. Code Ann. §§ 49-5-511(a)(1)-(5); -5-512(a). The second circumstance where dismissal is authorized is when a teacher's position has been abolished pursuant to a legitimate reduction-in-force. Tenn. Code Ann. § 49-5-511(b)(1). Specifically, the tenure law provides that, "[w]hen it becomes necessary to reduce the number of teaching positions . . . in the system because of a decrease in enrollment or for other good reasons, the board shall be empowered to dismiss such teachers . . . as may be necessary." *Id.* Teachers dismissed pursuant to a reduction-in-force must be given a written notice of the dismissal that explains why the dismissal was necessary and placed on a preferred list for reemployment. Tenn. Code Ann. § 49-5-511(b)(2)-(b)(3).

Accordingly, the aforementioned provisions demonstrate that the plaintiff has a property interest in her position as a tenured teacher. That interest protects the plaintiff from a dismissal for cause by first requiring notice and an opportunity for a hearing. However, the plaintiff's property interest ceases to exist once her position is eliminated pursuant to a legitimate reduction-in-force. Indeed, at that point, there is simply nothing in which she can claim an entitlement. *Schultz v. Green Cnty., Wis.*, 645 F.3d 949, 952 (7th Cir. 2011).

In the instant case, the defendants contend that the plaintiff's teaching position was eliminated pursuant to a bona-fide reduction-in-force necessitated by an anticipated shortfall in state funding. (Docket No. 16 at 8.) Thus, they argue that they cannot be held liable for violating the plaintiff's due process rights. (*Id.* at 10.) The plaintiff, on the other hand, contends that the defendants have utilized the reduction-in-force as an artifice to discharge her without providing the process she should have been due. (Docket No. 26 at 2, 12.)

The Sixth Circuit has previously suggested that a public employer should not be able to avoid its due process obligations by using a "sham" reduction-in-force. *Upshaw v. Metro. Nashville Airport Auth.*, 207 F.App'x. 516, 520 (6th Cir. 2006). Moreover, after the instant action was filed, the Tennessee legislature amended the tenure law to expressly forbid the director of schools and board of education to utilize abolition of teacher positions as a pretext to avoid dismissal charges and the accompanying due process protections afforded to teachers facing a dismissal for cause. 2012 Tenn. Legis. Serv. 1012 (West). Here, however, the plaintiff has failed to present a genuine dispute of material fact as to whether the reduction-in-force was in fact a "sham."

The plaintiff does not dispute that state funding cuts required the Trousdale County school system to eliminate teacher positions. Instead, she argues that the defendants did not in fact abolish her teaching position because the school system has continued to employ a teacher to instruct sixth grade reading/language arts. (Docket No. 26 at 8.) The court fails to see the persuasive value of this argument given the factual context of this case. Indeed, the record shows that, at all relevant times, there was only one individual teaching sixth grade reading/language arts - a subject that is covered on a statewide achievement test administered to students in grades 3-8. *See Tennessee Department of Education, Frequently Asked Questions About the Achievement Test*, http://www.state.tn.us/education/assessment/ach_faq.shtml (last visited June 19, 2013). Plainly, somebody had to teach sixth grade reading/language arts after

the plaintiff was dismissed under the reduction-in-force, and the defendants assigned this task to other teachers in the system. No teacher was hired to replace the plaintiff.[7]

Again, the relevant inquiry is whether the reduction-in-force was a pretext for discharging the plaintiff without affording her due process. Here, the evidence shows that the defendants implemented a reduction-in-force to save costs in light of an expected drop in state funding. By eliminating teaching positions, including the plaintiff's, the school system could cut expenses in the form of paying less teacher salary, and the resulting savings could then be applied to address the expected funding shortfall.

The plaintiff nonetheless contends that the defendants dismissed her for cause based on her workplace performance. (Docket No. 26 at 8.) However, she cites no evidence to support that contention, but merely quotes, out of context, an argument made by the defendants in their summary judgment brief. (*Id.*) The plaintiff also appears to argue that the reduction-in-force was a "sham" because the defendants admitted that they did not want to have a hearing over the plaintiff's suspension and risk the disclosure of certain details from the April 2011 teacher interviews. (*Id.*) However, the plaintiff's argument fails to account for the fact that the

---

[7] Again, the proof in the record shows that two individuals from within the school system, in succession, assumed the responsibility of teaching sixth grade reading/language arts following the plaintiff's dismissal. There is also proof in the record that, during the summer of 2011, the school system filled openings for teaching positions, wherein some of the individuals hired assumed assignments to teach English. Nevertheless, the record does not show that these personnel moves in any way altered the net decrease of 4 teaching positions achieved after the Board approved the reduction-in-force. Indeed, it does not appear that the plaintiff has even taken discovery on this precise issue, as Satterfield was not probed during his deposition on whether the aforementioned moves reduced the number of net teaching positions eliminated after the reduction-in-force. Nor does the plaintiff argue that the moves resulted in such a reduction in her summary judgment papers.

13

defendants already achieved that objective prior to eliminating teacher positions by reaching a settlement agreement with the plaintiff regarding her disciplinary matter.

In sum, the plaintiff has failed to offer any evidence from which a reasonable jury could conclude that the defendants' actions were pretextual. Instead, the record evidence shows that the plaintiff's teaching position was eliminated pursuant to a broader cost control effort necessitated by state funding cuts. Accordingly, the plaintiff's federal and state due process claims will be dismissed.

### B. Teacher Tenure Law

In light of the court's finding that the defendants eliminated the plaintiff's position pursuant to a legitimate reduction-in-force, the plaintiff's claims under Tennessee's teacher tenure law, which are predicated on the same "sham" theory that underlies her due process claims, must also be dismissed.

### C. Implied Covenant of Good Faith and Fair Dealing

Finally, the plaintiff contends that her dismissal by the defendants breached the implied covenant of good faith and fair dealing that attached to the settlement agreement she executed with Satterfield. (Docket No. 26 at 10.) It is well-settled in Tennessee that "there is implied in every contract a duty of good faith and fair dealing in its performance and enforcement." *Wallace v. Nat'l Bank of Commerce*, 938 S.W.2d 684, 686 (Tenn. 1996) (internal quotation marks and citations omitted). However, this implied duty "does not extend beyond the agreed upon terms of the contract and the reasonable contractual expectations of the parties." *Id.* at 687.

Under the terms of the settlement agreement here, Satterfield, in his capacity as the director of schools, promised that the school system would not pursue dismissal charges against

the plaintiff based on then-available information in exchange for her agreeing to: (1) withdraw her request for a suspension hearing; and (2) sign a letter of reprimand. The plaintiff argues that her dismissal less than one month after the settlement agreement was executed shows that the defendants breached the implied covenant of good faith and fair dealing. (Docket No. 26 at 10.) The court disagrees.

Again, the plaintiff was dismissed pursuant to a legitimate reduction-in-force, and the settlement agreement, by its express terms, only protected the plaintiff against facing dismissal charges predicated on the February 24, 2011 classroom incident. Accordingly, the plaintiff's dismissal under the reduction-in-force is beyond the scope of the implied covenant, which is tied to the terms of the settlement agreement. Moreover, given its plain language, the plaintiff, who was represented by counsel during settlement negotiations, cannot argue that the agreement gave her a reasonable expectation that she would be protected against dismissal pursuant to a legitimate reduction-in-force.

The court also notes that the plaintiff's implied covenant argument is directed to the purported knowledge held by the defendants at the time of the settlement agreement's formation. Indeed, the plaintiff contends that the defendants induced her to enter into the settlement agreement by making illusory promises of continued employment. (Docket No. 26 at 10.) However, the Tennessee Supreme Court has held that "the common law duty of good faith in the performance of a contract does not apply to the formation of a contract." *Wallace*, 938 S.W.2d at 687 (citing *Restatement (Second) of Contracts* § 205 cmt. c (1979)).

In any event, even if the implied covenant claim were somehow actionable, the plaintiff has failed to offer any evidence creating a genuine dispute of material fact as to the issue of bad

15

faith. To support her contention that the defendants fraudulently induced her into entering the settlement agreement, the plaintiff relies on the fact that: (1) Satterfield received the BEP funding estimate on April 19, 2011, two days before he signed the settlement agreement; and (2) she was dismissed less than one month after the parties executed that agreement. (Docket No. 26 at 10.) However, the plaintiff has offered no proof indicating that Satterfield knew, at the time he signed the agreement, that he was going to terminate the plaintiff. For his part, Satterfield has offered uncontroverted testimony indicating that he: (1) had no intention of terminating the plaintiff for cause due to the classroom incident that transpired on February 24, 2011; (2) did not initially understand the full implications of the BEP funding estimate after receiving it on April 19, 2011; (3) decided to abolish the plaintiff's position only after the Board approved his recommendation to eliminate 5 teaching positions at its May 12, 2011 meeting; and (4) selected the plaintiff for the reduction-in-force based upon feedback from principals, prior evaluations, and her TVAAS scores. Thus, given the record before the court, no reasonable jury could find that the defendants acted in bad faith.

For all of these reasons, the plaintiff's claim that the defendants breached the implied covenant of good faith and fair dealing will be dismissed.

## CONCLUSION

For all of the reasons discussed herein, the Defendants' Motion for Summary Judgment (Docket No. 11) will be **GRANTED**. Moreover, in light of the court's rulings, the Plaintiff's Motion for Partial Summary Judgment (Docket No. 24) will be **DENIED**.

An appropriate Order will enter.

_____
ALETA A. TRAUGER
United States District Judge